UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPB NO. 1, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>VALLEY FORGE INSURANCE COMPANY,<br><br>            Defendant. | Civil No. 05cv2027-L(BLM)<br><br>**ORDER**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT; AND**<br><br>**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT ITS ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff WPB No. 1, LLC purchased an insurance policy from Defendant Valley Forge Insurance Company to insure its property in Florida, including a commercial building. During the policy period, the building was damaged by Hurricane Jeanne. As a result of the hurricane, mold developed in the property. Plaintiff incurred $747,664.24 in expenses to repair hurricane damage, of which $328,363.73 is attributable to mold remediation. Defendant agreed to reimburse Plaintiff for the loss; however, it refused to pay for mold remediation in excess of $15,000. This action arises out of the parties' dispute to what extent mold damage is covered by the policy.

/ / / / /

1    Plaintiff filed a complaint in San Diego County Superior Court for breach of contract and
2 breach of the implied covenant of good faith and fair dealing.  Defendant removed the action to
3 this court based on diversity jurisdiction.  The parties filed cross-motions for summary judgment,
4 or in the alternative for partial summary judgment.  For the reasons which follow, Defendant's
5 motion for summary judgment is **GRANTED**, its alternative motion for a partial summary
6 judgment is **DENIED** as moot, and Plaintiff's motion is **DENIED**.

7    As to the breach of contract claim, the parties' arguments are focused on policy
8 interpretation.  While Defendant argues that the policy unambiguously limits mold coverage to
9 $15,000, Plaintiff argues the mold provisions are ambiguous, and should be construed in favor of
10 greater coverage.

11   At the outset, however, the parties raise a choice of law issue, since the insured property
12 is located in Florida, and the policy does not include a choice of law provision.  Under the *Erie*
13 doctrine, federal courts in diversity cases use the substantive choice of law rules of the forum
14 state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Shannon-Vail Five, Inc.
15 v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001).  Under California law, "[t]he fact that two states
16 are involved does not in itself indicate that there is a conflict of laws or choice of law problem.
17 There is obviously no problem where the laws of the two states are identical."  *Stonewall
18 Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 642 (1993) (internal
19 quotation marks and citations omitted).

20   The parties agree that insurance policy interpretation laws in California and Florida are
21 the same, in that the court first looks to the language of the policy itself.  (Def.'s Mem. of P. &
22 A. in Supp. of Mot. for Summ. J. or in the Alternative Mot. for Partial Summ. J. at 6; Pl.'s Mem.
23 of P. & A. in Opp'n to Def.'s Mtn for Summ. J. at 16 ("Both California and Florida recognize
24 the same rules of insurance policy interpretation.")  The starting point of policy interpretation
25 under California and Florida law is the express language of the policy itself.  If the language is
26 unambiguous, the court need not look further. In California,

> [u]nder statutory rules of contract interpretation, the mutual intention of the parties
> at the time the contract is formed governs interpretation.  Such intent is to be
> inferred, if possible, solely from the written provisions of the contract.

*AIU Ins. Co. v. Super. Ct. (MFC Corp.)*, 51 Cal.3d 807, 822-23 (1990) (internal citations omitted). Similarly, under Florida law,

> [w]e must begin by looking to the language of the policy. If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written.

*Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004) (internal quotation marks and citations omitted). Either state's insurance contract interpretation laws lead to the same outcome. Accordingly, as to policy interpretation, the choice of law issue is moot. *Beech Aircraft Corp. v. Super. Ct. of Los Angeles County (Aanestad)*, 61 Cal. App. 3d 501, 518 (1976).

In this case, the coverage provision of the policy's Special Property Coverage Form states in pertinent part:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. . . . [¶]
>
> **A.   COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property[1] . . . caused by or resulting from any Covered Cause Of Loss.
>
> [¶]
>
> **3.   Covered Causes of Loss**
>
> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> **a.**   Excluded in section **B.** EXCLUSIONS;
> **b.**   Limited in paragraph **A.4** Limitations; or
> **c.**   Excluded or limited by other provisions of this policy.

(Decl. of Derrick R. Sturm, Esq. in Supp. of Valley Forge Ins. Co.'s Mot for Summ. J. or in the Alternative Mot. for Partial Summ. J., Ex. B, Business Account Package Policy ("Policy") at Plaintiff0031-32 (all emphases in original).)

Plaintiff argues that Paragraph A, the insuring clause, is very broad and "expressly covers *all damages* caused by a windstorm." (Pl's Mot. for Summ. J., or Alternatively, for Partial Summ. J., Mem. of P. & A., at 8. (emphasis in original).) In making this argument, however,

---

[1] Defendant does not dispute that Plaintiff's Florida building is Covered Property under the policy.

Plaintiff ignores the introductory sentence admonishing the reader to read the entire policy because various provisions restrict coverage, and Paragraph A.3. which references exclusions and limitations.  (Policy at Plaintiff0031-32.)

Accordingly, to determine whether Plaintiff's mold damage is covered, exclusions and limitations must be examined next.  These provisions state in pertinent part:

> **B.     EXCLUSIONS**
>
> **1.**    We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any other sequence to the loss.

(Policy at Plaintiff0041.)  Although the exclusions listed immediately below this provision do not refer to mold, the policy includes a separate "Fungus," Wet Rot, Dry Rot and Bacteria Exclusion/Limited Coverage endorsement, which does:

> **A.**     The following is added to Section **B. EXCLUSIONS**, Paragraph **1.**:
>
> **"Fungus," Wet Rot, Dry Rot and Bacteria**
>
> Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.
>
> But if "fungus," wet or dry rot or bacteria results in a "specified cause of loss,"[2] we will pay for the loss or damage caused by that "specified cause of loss."

(Policy at Plaintiff0027 (all emphases in original).)  Accordingly, mold is excluded from coverage, except if it "results in" a specified cause of loss.  Plaintiff does not contend that mold in this case resulted in a specified cause of loss.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

---

[2]     "'Specified Causes of Loss' means the following:  [¶] Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage."  (Policy at Plaintiff0050.)

Therefore, the next step is to examine the policy for any applicable exceptions to the mold exclusion. In this regard, the policy provides:

> This exclusion does not apply: [¶]
>
> **2.**  To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus," Wet Rot, Dry Rot and Bacteria Section of this endorsement.

(*Id.* (emphasis in original).) Since the endorsement includes a limited coverage provision for mold, the mold exclusion does not apply, and coverage is provided as stated in the endorsement:

> **D.**  The following is added to Section **A. COVERAGE**, Paragraph **5**. (Special Property Coverage Form) . . . :
>
> **Additional Coverage - Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria**
>
> **1.**  The coverage described below in paragraph **D.2.** and **D.6.** of this Limited Coverage endorsement only applies when the "fungus," wet or dry rot or bacteria is the result of Covered Causes of Loss other than fire or lightning that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.[3]
>
> **2.**  We will pay for loss or damage by "fungus," wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:
>
> **a.**  Direct physical loss or damage to Covered Property caused by "fungus," wet or dry rot or bacteria . . . [¶]
>
> **3.**  The coverage described under paragraph **D.2.** of this Limited Coverage endorsement is limited to $15,000, unless a different limit is shown in the Declarations.[4] Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of Covered Causes of Loss (other than fire or lightning) which take place in a 12-month period . . . . With respect to a particular occurrence of loss which results in "fungus," wet or dry rot or bacteria, we will not pay more than a total of $15,000 . . ., even if the "fungus," wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

(*Id.* (all emphases in original).)

---

[3]  Defendant concedes the mold damage in this case is the result of a Covered Cause of Loss under the policy. For purposes of its summary judgment motion, Defendant also assumes that the remaining conditions of this paragraph are satisfied. (Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. or in the Alternative Mot. for Partial Summ. J. at 12.)

[4]  Neither party contends that a different limit is shown in the Declarations.

Based on the plain policy language, the most Plaintiff can recover for mold is $15,000, the amount Defendant paid Plaintiff. Plaintiff's arguments that the policy is ambiguous and should be interpreted in favor of greater coverage are unavailing.

First, Plaintiff complains the policy's mold provisions are ambiguous because they are found in several places in the policy, and because using endorsements for contemporaneous policy amendments is unnecessary given the widespread use of computes with word processing programs. Plaintiff is correct that the policy would be easier to follow if its numerous endorsements were incorporated in the pertinent portions of the policy, rather than included as attachments. Nevertheless, the court disagrees that the policy's fractured structure by itself makes it ambiguous.

Second, Plaintiff argues the mold exclusion is ambiguous in the context of the instant claim. Specifically, Plaintiff maintains it is ambiguous when mold results from a hurricane, and, as conceded by Defendant, coverage for hurricane damage is provided by the policy. Plaintiff argues that since mold is a likely result of hurricane damage, mold remediation should be covered, because this is the insured's reasonable expectation. This argument misses the mark because the policy expressly covers the circumstance when mold is caused by a covered event, such as a hurricane. As stated in the "Fungus," Wet Rot, Dry Rot and Bacteria Exclusion/Limited Coverage endorsement, when mold is caused by a Covered Cause of Loss such as a hurricane, mold damage is not excluded, but is covered up to the limit of $15,000.

Last, Plaintiff argues the mold provision is ambiguous in the context of the policy as a whole, particularly when read together with the Windstorm or Hail Percentage Deductible endorsement and Known or Continuing Injury or Damage endorsement. Plaintiff contends that in light of these endorsements the policy provides coverage for all direct, indirect, and continuing damage caused by or resulting from the hurricane. The express language of the endorsements, however, does not support Plaintiff's interpretation.

The policy has two Known or Continuing Injury or Damage endorsements. One modifies the insurance provided under the Umbrella Coverage Endorsement, and the other modifies the Business Liability Coverage Form. (Policy at Plaintiff0023, Plaintiff0020.) Neither the

Umbrella Coverage Endorsement nor the Business Liability Coverage Form provide coverage in this case, and neither party contends otherwise.  (*See id*. at Plaintiff0051-62 (Umbrella Coverage Endorsement) and Plaintiff0064-76 (Business Liability Coverage Form).)  The policy does not contain a Known or Continuing Injury or Damage endorsement applicable to the Special Property Coverage Form, which provides coverage in this case.  Accordingly, both Known or Continuing Injury or Damage endorsements are irrelevant to the interpretation of the Policy for purposes of this case.

The Windstorm or Hail Percentage Deductible endorsement applies to the Special Property Coverage Form.  (*Id*. at Plaintiff0013.)  It modifies the Declarations page of the Policy and the Deductibles section of the Special Property Coverage Form.  (*Cf. id*. at Plaintiff0001-03, Plaintiff0044.)  Under the policy, Defendant "will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible amount shown in the Declarations."  (*Id*. at Plaintiff0044.)  It "will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance."  (*Id*.)  The "Fungus," Wet Rot, Dry Rot and Bacteria Exclusion/Limited Coverage endorsement, which includes a $15,000 limit for mold damage, sets a limit of insurance, not a deductible.  (*See id*. at Plaintiff0027.)  Since Plaintiff does not raise an issue pertaining to a deductible, the Windstorm or Hail Percentage Deductible endorsement is irrelevant to the interpretation of the policy for purposes of this case.

Defendant paid Plaintiff $15,000, the maximum amount for mold damage provided by the policy under the circumstances of this case.  Since there are no genuine issues as to any material fact on the breach of contract cause of action, it can be summarily adjudicated in Defendant's favor.  *See* Fed. R. Civ. P. 56(c).

The remaining cause of action is for breach of the implied covenant of good faith and fair dealing.  It raises a new choice of law issue, since each claim requires separate choice of law consideration.  *Beech*, 61 Cal. App. 3d at 518.  However, on the issue whether a plaintiff can recover for bad faith in the absence of a breach of the underlying contract, California and Florida law again mandate the same answer.  Accordingly, the choice of law issue with respect to the bad faith claim is moot.  *See id*.

Under California law, "[a] 'bad faith' claim cannot be maintained unless policy benefits are due . . .." *McMillin Scripps N. P'ship v. Royal Ins. Co.*, 19 Cal. App. 4th 1215, 1222 (1993). Similarly, under Florida law, "an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith . . . can accrue." *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So.2d 1289, 1291 (Fla. 1991). Under either state's law, a finding that no insurance benefits were owed precludes as a matter of law a finding of breach of the implied covenant of good faith and fair dealing based on the failure to pay the same benefits. Since Defendant paid all benefits owed Plaintiff under the Policy for mold damage, Plaintiff cannot prevail on its bad faith claim against Defendant.

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, or Alternatively, for Partial Summary Judgment is **DENIED**.

2. Defendant's Motion for Summary Judgment is **GRANTED**, and its alternative Motion for Partial Summary Judgment is **DENIED** as moot.

**IT IS SO ORDERED**.

DATED: March 27, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL